J-S81004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DENESHYA AUGUSTA POOLE | : | |
| | : | |
| Appellant | : | No. 554 MDA 2017 |

Appeal from the Judgment of Sentence October 21, 2016
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0000001-2016

BEFORE:   PANELLA, J., STABILE, J., and PLATT*, J.

MEMORANDUM BY PANELLA, J.                    **FILED APRIL 24, 2018**

Deneshya Augusta Poole appeals from the judgment of sentence entered in the Lycoming County Court of Common Pleas, following her conviction for false reports to law enforcement authorities.[1] We affirm.

Appellant is an inmate at SCI Muncy. On May 26, 2015, Appellant contacted the facility's Prison Rape Elimination Act ("PREA" or the "Act"), now codified at 34 U.S.C.A. §§ 30301-30309, compliance manager to allege that a correctional officer, Hannah Adrian, watched Appellant through a window in her cell as Appellant used the restroom. PREA makes voyeurism a punishable offense. The compliance manager forwarded Appellant's allegation to an

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 4906(a).

investigatory officer, who conducted interviews, reviewed video footage from the date in question, and ultimately deemed the allegation unfounded.

The Commonwealth then charged Appellant with making false reports to law enforcement authorities. The matter proceeded to trial and a jury returned with a guilty verdict. The court sentenced Appellant to six to twenty-four months' imprisonment, to run concurrently with the unrelated sentence for which she is currently incarcerated. Appellant filed post-sentence motions, which were denied by operation of law. This appeal is now before us.

Appellant raises several issues on appeal, which we, for clarity, organize into three claims: the trial court lacked subject matter jurisdiction to entertain the false reports claim; the verdict is against the weight of the evidence; and the Commonwealth failed to present sufficient evidence to convict Appellant of false reports. We address each issue in turn.

Appellant reasons that PREA expressly precludes any prosecution for the crime of false reports where an inmate has made an allegation of sexual abuse. She argues PREA stripped the trial court of subject matter jurisdiction to hear this case. We disagree.

Subject matter jurisdiction relates to the power of a court to hear and rule upon the controversy presented. **See Commonwealth v. Bethea**, 828 A.2d 1066, 1074 (Pa. 2003). Every Court of Common Pleas in Pennsylvania has subject matter jurisdiction to hear a controversy arising out of allegations of criminal activity occurring in Pennsylvania. **See id**.

"For the purpose of disciplinary action, a report of sexual abuse made in good faith, based upon a reasonable belief that the alleged conduct occurred, shall not constitute falsely reporting an incident or lying, even if an investigation does not establish evidence sufficient to substantiate the allegation." 28 C.F.R. § 115.78(f).[2] The Act organizes allegations into three categories—substantiated, unsubstantiated, and unfounded. *See* 28 C.F.R. § 115.5. An unsubstantiated allegation derives from an investigation that is inconclusive. *See id*. By contrast, an unfounded allegation is one determined to be false. *See id*.

The Act prohibits prosecution of persons who report sexual abuse and whose claims are unsubstantiated following an inconclusive investigation. *See* 28 C.F.R. § 115.78(f). The Act does not protect from prosecution persons who, like Appellant, report sexual abuse and whose claims are explicitly deemed false. *See id*. Consequently, Appellant's jurisdictional claim is without merit.

In Appellant's second challenge, she claims the verdict is not supported by the weight of the evidence. Though Appellant properly preserved this weight claim in her post-sentence motions, her appellate brief offers only generic weight law, and lacks relevant argument. She instead refers the

_____

[2] PREA was enacted by the United States Congress in 2003, at P.L. 108-79. Pennsylvania's state prisons are required to comply with the Act, and the Pennsylvania Department of Justice publishes PREA reports annually. *See* Pennsylvania Department of Corrections Annual and SVV Reports, last visited 3/26/18, available at: http://www.cor.pa.gov/General%20Information/PrisonRapeEliminationAct(PREA)/Pages/DOC-PREA-Statistics.aspx.

reader to her previous argument sections regarding sufficiency. Weight and sufficiency are separate claims; a weight of the evidence claim actually "concedes that there is sufficient evidence to sustain the verdict." ***Commonwealth v. Rivera***, 983 A.2d 1211, 1220 n.8 (Pa. 2009) (citation omitted). However, because Appellant does not present relevant argument to support this challenge, we find she has waived the weight issue by discussing the sufficiency of the evidence in the guise of a separate weight claim.[3] ***See*** Pa.R.A.P. 2111 (listing requirements for presenting cognizable issue on appeal). Thus, we will instead evaluate her remaining sufficiency claim.

Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find each element of the crimes charged is established beyond a reasonable doubt. ***See Commonwealth v. Dale***, 836 A.2d 150, 152 (Pa. Super. 2003).

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." ***Commonwealth v. Bruce***, 916

---

[3] A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." ***Commonwealth v. Davidson***, 860 A.2d 575, 581 (Pa. Super. 2004) (citations omitted), *aff'd*, 938 A.2d 198 (Pa. 2007). Had we addressed this claim on the merits, we would have found the verdict does not in any respect shock one's sense of justice. The figure of Justice is firmly rooted to her pedestal.

A.2d 657, 661 (Pa. Super. 2007) (citation omitted). Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. *See Commonwealth v. Kinney*, 863 A.2d 581, 584 (Pa. Super. 2004). "As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." *Id*. (citation omitted). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Bruce*, 916 A.2d at 661 (citation omitted). Evidence is weak and inconclusive "[w]hen two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances…." *Commonwealth v. Woong Knee New*, 47 A.2d 450, 468 (Pa. 1946). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) (citations omitted).

Appellant's final challenge contests three of the elements of her conviction for false reports. Appellant contends she did not knowingly give false information, because she was unaware her claim would be investigated or that she was implicating C.O. Adrian in a crime. Appellant also asserts her allegation was not knowingly false, because she believed C.O. Adrian had watched her use the restroom. Additionally, Appellant argues the Commonwealth failed to present evidence that the deputy who took her report or the investigating officer were "law enforcement officers" as required by the crime of false reports. These contentions are wholly without merit.

"[A] person who knowingly gives false information to any law enforcement officer with intent to implicate another commits a misdemeanor of the second degree." 18 Pa.C.S.A. § 4906(a). Thus, the Commonwealth must establish four elements to prove this crime: "(1) the defendant must have made the statement to a law enforcement officer; (2) the defendant's statement must be false; (3) the defendant must know the statement is false; and (4) the defendant must intend to implicate another." ***Commonwealth v. Soto***, 650 A.2d 108, 110 (Pa. Super. 1994) (citation omitted). A law enforcement officer "is any person who is by law given the power to enforce the law when acting within the scope of that person's employment." Pa.R.Crim.P. 103.

At trial, the Commonwealth presented several witnesses. SCI Muncy's Deputy Superintendent William Frantz testified first. He was the PREA compliance manager at the time of the allegation. ***See*** N.T. Trial, 4/5/16, at 36. In this position, he was responsible for training correctional officers on PREA requirements, and processing paperwork for sexual assault investigations in accordance with the policy. ***See id***.

He stated he interviewed Appellant on May 26, 2015, about an incident Appellant alleged happened on May 14, 2015. ***See id***., at 41. He testified he was unaware of why Appellant waited nearly two weeks to report this incident. ***See id***. Appellant informed Deputy Frantz that C.O. Hannah Adrian had watched Appellant as she used the toilet in her cell. ***See id***., at 37. Appellant reported to Deputy Frantz that she told C.O. Adrian she was using the toilet,

and the C.O. nevertheless continued to look in her cell window and watch her. *See id*., at 38. Deputy Frantz testified that, if verified, this incident would constitute voyeurism. *See id*., at 36. Deputy Frantz simultaneously filled out the paperwork to initiate the investigation while he was conducting the interview with Appellant. *See id*., at 37. Deputy Frantz submitted this paperwork to the security office for investigation. *See id*., at 39.

C.O. Hannah Adrian then testified. She stated that on May 14, 2015, she walked to Appellant's cell in the Restricted Housing Unit to inform Appellant she had a visitor waiting for her. *See id*., at 48-49. Two other correctional officers also accompanied her to Appellant's cell, per prison protocol. *See id*., at 49. C.O. Adrian indicated she heard Appellant shout that she was using the toilet, and so she waited with the two other officers some distance away from Appellant's cell. *See id*., at 51. C.O. Adrian asserted that although the entirety of the cell is completely visible through the windows, she was facing away from the cell while she waited for Appellant. *See id*., at 51. Once Appellant declared she was finished and the three correctional officers prepared her for her visit, Appellant told C.O. Adrian she was "going to fuck [her] up." *Id*. at 55. In response, C.O. Adrian wrote Appellant a misconduct report for threatening her.

The intelligence gathering captain for the prison, Shawn Waltman, testified after C.O. Adrian. Captain Waltman stated he conducted the investigation on the report Appellant made. *See id*., at 63. He reviewed relevant videotape from the closed-circuit television monitoring in Appellant's

housing block. *See id*., at 64. Appellant stipulated the video was authentic, and the Commonwealth played the tape for the jury. *See id*., at 67.

Captain Waltman described the location of Appellant's cell as seen in the tape, and pointed out that C.O. Adrian and the other officers were standing several feet away, with C.O. Adrian's back to the cell. *See id*., at 67-68. Captain Waltman also testified about the statements he took from C.O. Adrian and the two accompanying officers. *See id*., at 71. He used this information to determine Appellant's allegation was unfounded. *See id*. He confirmed that an unfounded PREA allegation is not made in good faith, because "we were able to prove beyond a shadow of a doubt that the incident did not occur." *Id*., at 80. He also testified that a correctional officer deemed to have violated PREA is subject to firing and outside prosecution. *See id*., at 72. Any PREA allegation must also be reported to the state police. *See id*., at 81.

The defense presented no additional evidence or testimony, and the jury convicted Appellant of false reports.

Based on the foregoing, we find the Commonwealth presented sufficient evidence to prove each element of this offense. Deputy Frantz and Captain Waltman testified that, as part of their employment with the prison, they are tasked with investigating and enforcing discipline for alleged PREA violations. Deputy Frantz testified that Appellant saw him fill out the paperwork to start a PREA investigation during their interview. Appellant accused C.O. Adrian of a serious offense, voyeurism, which is a violation of PREA. The Commonwealth played a videotape showing that C.O. Adrian was several feet away from

Appellant's cell at the time Appellant alleged C.O. Adrian was watching her. C.O. Adrian testified Appellant said she wanted to "fuck [C.O. Adrian] up," and she wrote a misconduct report for Appellant's behavior.

Taken in the light most favorable to the Commonwealth as the verdict winner, the evidence was sufficient to show Appellant made a knowingly false statement to Deputy Frantz, with the intent to implicate C.O. Adrian in a crime. Thus, the evidence presented was sufficient to convict Appellant of false reports to law enforcement authorities. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/24/18