J-S41007-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DONOVAN ORION LUCRET | |
| Appellant | No. 501 MDA 2022 |

Appeal from the Judgment of Sentence Entered February 8, 2022
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0002420-2020

BEFORE:  LAZARUS, J., MURRAY, J., and STEVENS, P.J.E.

MEMORANDUM BY LAZARUS, J.:                 **FILED: FEBRUARY 22, 2023**

Donovan Orion Lucret appeals from the judgment of sentence, entered in the Court of Common Pleas of York County, after a jury convicted him of first-degree murder[1] and carrying a firearm without a license.[2]  After careful review, we affirm.

Lucret's charges stem from a February 17, 2020 incident, which occurred at approximately 5:54 p.m. on the 400 block of Smith Street in York City when Lucret shot an individual, later identified as Shylique Folk, outside of Folk's home.  **See** N.T. Jury Trial, 12/7/21, at 231.  Upon arrival, York City Police Officers found the victim laying on his back, in front of a residence

---

[1] 18 Pa.C.S.A. § 2502(a).

[2] 18 Pa.C.S.A. § 6106(a)(1).

located at 428 Smith Street, with a gunshot wound to his head. *Id.* at 232. Two females were holding a rag or shirt over the victim's head. *Id.* The victim was still alive, and EMS brought him to York Hospital for treatment. *Id.* at 232-33. Folk died the next day due to the gunshot wound to his head. *Id.* at 267, 362.

Video footage obtained from the scene shows Lucret, wearing a red, white, and blue sweatshirt, walking near the victim's home. *Id.* at 301-07. Lucret was holding a gun, which emitted a muzzle flash at the time of the incident. *Id.* Lucret conceded it was him in the surveillance video. *Id.*, 12/8/21, at 400. Lucret testified that just before the alleged shooting, he was walking down Jefferson Avenue towards Smith Street, with his friend Dayvion. *Id.* at 400-01. He stated that an unidentified individual began pulling out a gun, causing Lucret to draw his gun. *Id.* at 401. After hearing a shot, Lucret returned fire. *Id.* Lucret further testified that the shooting coincidentally occurred on the same sidewalk where Folk lived. *Id.* at 402. Lucret also testified that there were no barriers preventing him from running away from the gun shots or escaping the area. *Id.* at 435.

Video surveillance indicates that eight shots were fired. *Id.* at 475-76. Officers found seven spent shell casings within the area. N.T. Trial, 12/7/21, 282-83. Lucret testified that one of eight shots was fired from the weapon brandished by the unidentified individual. *Id.* at 401-03. Detective Andy Baez theorized that a passing car "could have taken a casing in the tire" or one could have fallen into a storm grate. N.T. Trial, 12/8/21, 473-74. Detective

Baez also testified that in his experience, by the cadence of the shooting and the succession of the shots, the eight shots came from one gun. *Id.* at 475-76. No other weapons were found at the scene. *Id.* at 475.

Corporal Nicholas Scianna, a firearm and toolmark examiner for the Pennsylvania State Police, determined that all seven shell casings found at the scene were discharged from the same firearm. *Id.* Detectives collected DNA swabs from the seven discharged 9-millimeter cartridge cases. N.T. Trial, 12/7/21, at 381. The major DNA mixture profile of at least three individual cartridges obtained from the scene matched the DNA profile obtained from Lucret. *Id.* at 383-84.

Lucret testified that he and Folk had been friends since 2014, but their friendship ended for unknown reasons. *Id.*, 12/8/21, at 395-97. In 2019, Folk and two other individuals allegedly invaded Lucret's home and attacked Lucret and his mother. *Id.* at 396. Also, during this alleged incident, Folk and the individuals stripped Lucret naked, made him suck on a broom handle, videotaped it, and posted it to social media. *Id.* at 412. Lucret testified that this incident is the reason why he carries a firearm. *See id.* at 402. However, no charges were ever filed. *Id.* at 397-98.

On June 25, 2020, the Commonwealth charged Lucret with first-degree murder, third-degree murder, and carrying a firearm without a license. A jury trial was held from December 6-8, 2021, after which Lucret was found guilty

of first-degree murder and carrying a firearm without a license.[3]  On February 8, 2022, Lucret was sentenced to life in prison without the possibility of parole on the charge of first-degree murder, and a concurrent sentence of one-to-two years' incarceration on the firearms charge.  Lucret filed a timely notice of appeal.  Both Lucret and the trial court have complied with Pa.R.A.P. 1925.  Lucret raises the following issues for our review:

1. Whether the evidence was sufficient to support Lucret's conviction for first-degree murder where the Commonwealth failed to prove beyond a reasonable doubt that Lucret did not justifiably act in self-defense?

2. Whether the trial court abused its discretion in rejecting Lucret's argument that his conviction for first-degree murder was against the weight of the evidence?

Appellant's Brief, at 4 (reworded for clarity).

Lucret first raises a challenge to the sufficiency of the evidence supporting his conviction for first-degree murder.  Our standard of review regarding challenges to the sufficiency of evidence is well-settled:

[W]e evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving it the benefit of all reasonable inferences to be drawn from the evidence.  Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.  Any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.  Additionally, the Commonwealth may sustain its burden solely be means of circumstantial evidence.

---

[3] The Commonwealth replaced the charge of third-degree murder with the charge of first-degree murder.

- 4 -

***Commonwealth v. Lake***, 281 A.3d 341, 346 (Pa. Super. 2022) (citations and quotations omitted).

"In applying the above test, the entire record must be evaluated[,] and all evidence actually received considered. [T]he trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence." ***Commonwealth v. Orr***, 38 A.3d 868, 872-73 (Pa. Super. 2011). Additionally, the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. ***Id.*** at 872. This Court may not re-weigh the evidence and substitute our judgment for that of the factfinder. ***Commonwealth v. Rogal***, 120 A.3d 994, 1001 (Pa Super. 2015) (citing ***Commonwealth v. Tejada***, 107 A.3d 788, 792-93 (Pa. Super. 2015)).

Lucret claims that the Commonwealth did not introduce direct evidence to disprove Lucret's claim of self-defense where video of the incident did not refute his version of events, he made no incriminating statements to police, and the physical evidence gave no indication that he did not act in self-defense. ***Id.*** Lucret also argues that video footage shows a shadow or silhouette figure emerging from a breezeway immediately before the shooting took place and indicates eight shots were heard. Appellant's Brief, at 22. This claim is meritless.

The Crimes Code defines first-degree murder as a criminal homicide committed by an intentional killing. 18 Pa.C.S.A. § 2502(a). "Evidence is

sufficient to sustain a conviction for first-degree murder where the Commonwealth establishes that the defendant acted with a specific intent to kill, that a human being was unlawfully killed, that the defendant did the killing and that the killing was willful, deliberate and premeditated." **Commonwealth v. Mason**, 741 A.2d 708, 711-12 (Pa. 1999).

"If a defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving the self-defense claim beyond a reasonable doubt." **Commonwealth v. Steele**, 234 A.3d 840, 846 (Pa. Super. 2020) (quoting **Commonwealth v. Houser**, 18 A.3d 1128, 1135 (Pa. 2011)). The use of force against a person is justified "when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force" by the other person. **Steele**, 234 A.3d at 846. A self-defense claim thus entails three elements: (1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (2) the defendant was free from fault provoking the difficulty which culminated in his use of deadly force; and (3) the defendant did not violate any duty to retreat. **Commonwealth v. Mouzon**, 53 A.3d 738, 740 (Pa. 2012).

We agree with the trial court that, the jury, having heard the testimony and viewed the surveillance footage, could reasonably have inferred that Lucret acted intentionally when he shot Folk on his sidewalk. Specifically,

there was sufficient evidence presented for the jury to find that Lucret had a motive to kill Folk, and the jury did not believe that Lucret's "nemesis, happened to be within the range of crossfire when an unidentified individual began shooting at [Lucret]." Trial Court Opinion, 6/10/22, at 5.

Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to disprove Lucret's claim of self-defense. Namely, the record shows that police officers examined the crime scene but found no evidence that Lucret was shot at by anyone and was thus acting in self-defense. While video evidence corroborates that eight shots were fired, Detective Baez testified that by the cadence and succession of the gun shots, all eight shots came from one gun. Additionally, DNA swabs obtained from the shell casings found at the scene matched that of Lucret. Lucret even testified himself that there were no barriers preventing him from fleeing the alleged gunman or escaping the area. N.T. Trial, 12/8/21, at 435. The jury had the benefit of viewing the footage and hearing testimony from the defendant himself and chose not to believe Lucret's version of events.

Furthermore, there was no evidence that Folk ever possessed a weapon or took any action that would have justified Lucret's use of force. There were no weapons found on Folk's body or in the area surrounding him when he was shot by Lucret. Similarly, there is no testimony from any of the witnesses stating Folk possessed a weapon. The evidence demonstrates that Lucret had an opportunity to retreat or escape the area, but did not. Therefore, in light

of the foregoing, we conclude that the evidence, including the reasonable inferences to be drawn therefrom, was sufficient to allow the jury to find Lucret guilty of first-degree murder.  ***Lake***, ***supra***.

Lucret next argues that the verdict was against the weight of the evidence.  Specifically, he contends that "he gave unrebutted testimony that he only fired his gun because an unknown person fired a gun at him."  Appellant's Brief, at 30.  Our standard of review of this claim is as follows:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.  Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination [whether] the verdict is against the weight of the evidence.  One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citations and emphasis omitted).

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed."  ***Commonwealth v. Galindes***, 786 A.2d 1004, 1013 (Pa. Super. 2001).  The weight of the evidence is exclusively for the jury, which is free to believe all, part, or none of the evidence and to determine the credibility of witnesses.  ***Commonwealth v. Devine***, 26 A.3d 1139, 1146 (Pa. Super. 2011).  An appellate court may not substitute its judgment for that of the

finder of fact. *Id.* Therefore, we may only reverse if the verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Champney*, 822 A.2d 403, 408 (Pa. 2003) (citing *Commonwealth v. Hawkins*, 701 A.2d 492, 500 (Pa. 1997)). In reviewing a trial court's adjudication of a weight of the evidence claim, "an appellate court determines whether the trial court abused its discretion based upon review of the record; its role is not to consider the underlying question in the first instance." *Commonwealth v. Blakeney*, 946 A.2d 645, 653 (Pa. 2008).

The trial court rejected Lucret's weight claim, noting that "the jury, sitting as the finder of fact for the charges, was free to determine the credibility of all witnesses and to make inferences based on all the evidence presented at trial." Trial Court Opinion, 6/10/22, at 9. The jury heard the testimony from both Lucret and the Commonwealth's witnesses, viewed the surveillance footage from the incident, and viewed the physical evidence. Moreover, there is no dispute that Lucret was present on the date and time of the incident, and it is likely that the jury did not find Lucret to be a credible witness or believe his theory of self-defense. In weighing the evidence, the jury was free to reject Lucret's justification defense and find, instead, that Lucret committed the crimes as charged. It is also clear that, in light of the extensive testimony and evidence offered by the Commonwealth, the trial court did not abuse its discretion in finding that the jury's verdict does not shock its sense of justice. *Id.* at 654; *Blakeney*, *supra*.

- 9 -

Based upon the foregoing, Lucret is not entitled to relief on either of his claims. Accordingly, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2023